**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

A.S., D.G., M.F., and T.M., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

SELECTQUOTE INSURANCE SERVICES,

Defendant.

Case No. **'23 CV2258 RBM MSB**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs A.S., D.G., M.F., and T.M. ("Plaintiffs"), on behalf of themselves and all other persons similarly situated, by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves, which are based on personal knowledge.

1.    This is a class action suit brought on behalf of all persons who have visited life.selectquote.com and received a quote for a life insurance policy.

2.    SelectQuote Insurance Services ("Defendant" or "SelectQuote") is an agency that provides customers with quotes for life insurance.

3.    When visitors to Defendant's website seek insurance quotes, they are asked personal information regarding any health conditions they might have.  At the time this information is solicited from customers, Defendant's website promises that its site is "100% secure."  Defendant also represents to consumers that it will "never sell your information."

4.    Unfortunately, Defendant failed to keep this promise.  Unbeknownst to consumers, Defendant shares highly sensitive information with several third parties.

5.    Plaintiffs are individuals with significant health conditions, including cancer, high blood pressure, and diabetes.  They disclosed these conditions to Defendant so they could get quotes for life insurance.  It never occurred to Plaintiffs that this information would be shared with several other third parties for Defendant's pecuniary gain.

6.    But Defendant did just that.  Now the health information of Plaintiffs and class members has been commoditized and traded by Defendant.

7.    Plaintiffs therefore bring this action on behalf of themselves and all others similarly situated in order to seek redress from Defendant for these broken promises and intrusions into their privacy.  Further, Plaintiffs seek an injunction

preventing Defendant from perpetrating these abuses on future unsuspecting consumers.

## THE PARTIES

8.      Plaintiff D.G. is domiciled in Elkridge, Maryland.  While in Maryland, in August 2023, Plaintiff applied for life insurance through SelectQuote's website.  While applying for life insurance, Plaintiff provided SelectQuote with his name, date of birth, gender, and email address.  Plaintiff also provided SelectQuote with health information, including that he has been diagnosed with cancer, diabetes, and high blood pressure.  Unbeknownst to Plaintiff, SelectQuote assisted third parties with intercepting this sensitive information.

9.      Plaintiff M.F. is domiciled in Winthrop, Massachusetts.  While in Massachusetts, in or around February 2023, Plaintiff accessed SelectQuote's website to complete an application for life insurance.  While applying for life insurance, Plaintiff provided SelectQuote with her name, date of birth, gender, and email address.  Plaintiff also provided SelectQuote with health information, including that she has been diagnosed with diabetes.  Unbeknownst to Plaintiff, SelectQuote assisted third parties with intercepting this sensitive information.

10.      Plaintiff A.S. is domiciled in Sylmar, California.  While in California, in November 2022, Plaintiff applied for life insurance through SelectQuote's website.  While applying for life insurance, Plaintiff provided SelectQuote with his name, date of birth, gender, and email address.  Plaintiff also provided SelectQuote with health information, including that he was diagnosed with depression and anxiety.  Unbeknownst to Plaintiff, SelectQuote assisted third parties with intercepting this sensitive information.

11.      Plaintiff T.M. is domiciled in Orlando, Florida.  While in Florida, in or around April 2023, Plaintiff applied for life insurance through SelectQuote's website.  While applying for life insurance, Plaintiff provided SelectQuote with his

name, date of birth, gender, and email address.  Plaintiff also provided SelectQuote with health information, including that he has high blood pressure.  Unbeknownst to Plaintiff, SelectQuote assisted third parties with intercepting this sensitive information.

12.    SelectQuote Insurance Services is a California corporation with its principal place of business in Overland Park, Kansas.  SelectQuote Insurance Services develops, owns, and operates life.selectquote.com, which is used throughout the United States.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than SelectQuote, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

14.    This Court has personal jurisdiction over Defendant because Defendant is domiciled in California.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

16.    SelectQuote lets prospective customers receive a quote for life insurance through its website.  To receive a quote, SelectQuote requires users to complete a questionnaire that asks for sensitive information.  This sensitive information includes, for example, users' medical diagnoses and social habits. Unbeknownst to users, however, SelectQuote has built its website to allow third parties to surreptitiously intercept the information they input.  These third parties

include, but are not limited to, LeadID LLC ("LeadID") and Meta Platforms, Inc. ("Facebook").

17.    To start, users enter their zip code and select "Get a Free Quote."

**Figure 1**



18.    When users click "Get a Free Quote," SelectQuote requests certain demographic information, including the prospective customer's date of birth, gender, height, weight, and state of residency.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Figure 2-5**







19.    SelectQuote then asks users if they already have any life insurance policies.

**Figure 6**



20.    SelectQuote prompts users to identify the type of insurance policies they are looking for, as well as certain financial and coverage information.

**Figure 7-9**

1    21.    Following those responses, SelectQuote inquires as to whether a user
2    currently smokes cigarettes or e-cigarettes.
3    **Figure 10**



11    22.    SelectQuote then presents users with a host of medical conditions and
12    request that they identify all conditions for which they have received treated.
13    **Figure 11**

23. The questionnaire continues with questions about driving violations, sports and activities, and family health history.

**<u>Figure 12-14</u>**







24.    Finally, SelectQuote asks users for personally identifying information as they prepare the user's quote, including their name, email address, address, and phone number.

**Figure 15-18**







25.    Prospective customers then select "Get a Quote."

**Figure 19**



26.    For each question in SelectQuote's questionnaire, users communicate their answers by inputting information and clicking "next."  SelectQuote represents to consumers that their entries are "100% secure.  We never sell your information."

**Figure 20**



27.    Unbeknownst to users, however, SelectQuote assists third parties with intercepting every one of those communications.

28.     As an example, the below figure shows network traffic to Facebook and LeadID when a user clicks the button on Defendant's website indicating that they have issues with alcohol or substance abuse:

**Figures 21 - 22**

```
"id": "1741729689333076",
"ev": "SubscribedButtonClick",
"dl": "https://life.selectquote.com/quote-form/step-10/",
"rl": "https://life.selectquote.com/quote-form/step-9/",
"if": false,
"ts": 1689621872123,
"cd": {
    "buttonFeatures": {
        "classList": "frm_label_button_container",
        "destination": "https://life.selectquote.com/quote-form/step-10/",
        "id": "",
        "imageUrl": "",
        "innerText": "Alcohol or Substance Abuse",
        "numChildButtons": 0,
        "tag": "div",
        "type": null
    },
    "buttonText": "Alcohol or Substance Abuse"
}
```

```
    },
    "tagid": "field_pr7dfd5db9b9a-0",
    "name": "item_meta[2045][]",
    "value": "a1",
    "checked": true,
    "label": "Alcohol or Substance Abuse",
    "type": "checkbox",
    "id": "05C369D4-9E57-9AE2-49F2-870010519DCE",
    "execution_time": 0,
    "lck": "6D773B08-02FF-7A2F-7638-D546A38B62D6",
    "lac": "16DEF780-4F73-236B-BCC4-D58BC360E29C",
    "client_time": 1689621872135
}
```

29.     Facebook and LeadID then leverage this information to target advertisements.

30.     Facebook is the largest social networking platform on the planet. To monetize its platform, Facebook sells advertising space to companies like SelectQuote. Facebook allows those companies to integrate software into their websites, software that tracks user activity, like the buttons they click or the forms they complete. That software then relays that information to Facebook, and once

that information is received, the social media site assimilates it into existing datasets that Defendant can then use to target advertisements.

31.    LeadID is an "interactive direct marketing company," touting its ability to "target audience[s] effectively."[1]  Once LeadID intercepts Plaintiffs' communications, the company assimilates that information into audiences that Defendant then uses to run advertisements.

## CLASS ACTION ALLEGATIONS

32.    Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons who have accessed life.selectquote.com and received a quote for life insurance (the "Class").

33.    Plaintiff D.G. seeks to represent a subclass of all Class members in Maryland who accessed life.selectquote.com and received a quote for life insurance (the "Maryland Subclass").

34.    Plaintiff M.F. seeks to represent a subclass of all Class members in Massachusetts who accessed life.selectquote.com and received a quote for life insurance (the "Massachusetts Subclass").

35.    Plaintiff T.M. seeks to represent a subclass of all Class members in Florida who accessed life.selectquote.com and received a quote for life insurance (the "Florida Subclass").

36.    Plaintiff A.S. seeks to represent a subclass of all Class members in California who accessed life.selectquote.com and received a quote for life insurance (the "California Subclass").

37.    Excluded from the Classes are Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Defendant has or had a controlling interest.

---

[1] *See* LeadID, https://leadid.net/.

38.    Plaintiffs are a member of the Class and Subclass they seek to represent.

39.    The Classes are so numerous that joinder of all members is impractical. Although Plaintiffs do not yet know the exact size of the Classes, upon information and belief, the Classes include more than one million members.

40.    The Classes are ascertainable because the Class members can be identified by objective criteria – all individuals who accessed life.selectquote.com and received a quote for life insurance.  Individual notice can be provided to Class members "who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

41.    There are numerous questions of law and fact common to the Classes which predominate over any individual actions or issues, including but not limited to:

(a)    Whether SelectQuote represented to Class members that it would not collect sensitive, confidential or protected information;

(b)    Whether SelectQuote gave the Class members a reasonable expectation of privacy that their communications were not being intercepted, received, or collected by third parties when they inputted sensitive information through life.selectquote.com;

(c)    Whether SelectQuote in fact assisted, conspired with, or otherwise aided third parties with intercepting, receiving, or collecting communications from Class members when Class members communicated inputted sensitive information;

(d)    Whether SelectQuote assistance with intercepting, receiving, or collecting communications between SelectQuote and Class members violated the law;

(e)     Whether SelectQuote's assistance with intercepting, receiving, or collecting communications between SelectQuote and Class members violated anti-wiretapping laws;

(f)     Whether Plaintiffs and Class members are entitled to declaratory and/or injunctive relief to enjoin the unlawful conduct alleged herein; and

(g)     Whether Plaintiffs and Class members have sustained damages as a result of SelectQuote's conduct and if so, what is the appropriate measure of damages or restitution.

42.     Plaintiffs' claims are typical of the claims of the members of the Classes as all members are similarly affected by SelectQuote's wrongful conduct.  Plaintiffs have no interests antagonistic to the interests of the other members of the Classes. Plaintiffs and all members of the Classes have sustained economic injury arising out of SelectQuote's violations of common and statutory law as alleged herein.

43.     Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of Class members they seek to represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

44.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish SelectQuote's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class

action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of SelectQuote's liability.  Class treatment of the liability issues will ensure that all claims are consistently adjudicated.

45.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CAUSES OF ACTION

### COUNT I
**Violation of the California Invasion of Privacy Act,
California Penal Code § 631
(All Classes)**

46.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

47.    Plaintiffs bring this Count individually and on behalf of all Class members.

48.    The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638.  The Act begins with its statement of purpose.

> The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

Cal. Penal Code § 630.

49.    California penal Code § 631(a) provides, in pertinent part:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner … willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over

any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or **who aids, agrees with, employs, or conspires** with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500).

50.    A defendant must show it had the consent of <u>all</u> parties to a communication.

51.    At all relevant times, SelectQuote aided, agreed with, and conspired with third parties to track and intercept Plaintiffs' and Class member's internet communications while receiving a quote through SelectQuote website. The third parties intercepted these communications without authorization and consent from Plaintiffs and Class members.

52.    SelectQuote, when aiding and assisting with the third parties' eavesdropping, intended to help them learn some meaning of the content in the URLs and the content the visitor requested.

53.    The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, the tracking technology falls under the broad catch-all category of "any other manner":

a.    The computer codes and programs the third parties used to track Plaintiffs' and the Class members' communications while they were navigating life.selectquote.com;

b.    Plaintiffs' and Class member's browsers;

c.    The Plaintiffs' and Class members' computing and mobile devices;

d.    The third parties' web and ad servers;

e.    The web and ad-servers from which third parties tracked and intercepted the Plaintiffs' and Class members' communications

while they were using a web browser to access or navigate life.selectquote.com;

    f.    The computer codes and programs used by the third parties to effectuate its tracking and interception of the Plaintiffs' and Class members' communications while they were using a browser to visit SelectQuote's website; and

    g.    The plan SelectQuote carried out to effectuate its tracking and interception of the Plaintiffs' and Class members' communications while they were using a web browser or mobile application to visit SelectQuote's website.

54.    Plaintiffs and Class members have suffered loss by reason of these violations, including, but not limited to, violations of their rights of privacy and loss of value in their personally identifiable information.

55.    Pursuant to California Penal Code § 637.2, Plaintiffs and Class members have been injured by the violation of California Penal Code § 631 and each seek damages for the greater of $5,000 or three times the actual amount of damages, as well as injunctive relief.

## COUNT II
### Violations of the California Invasion of Privacy Act,
### California Penal Code § 632
### (All Classes)

56.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

57.    The data collected on SelectQuote's websites constitute "confidential communications," as that term is used in Section 632, because Class members had objectively reasonable expectations of privacy with respect to their health information. Indeed, Defendant represented that the information they submitted was "100%" secure and that Defendant would refrain from "sell[ing] [their] information."

58.     SelectQuote is liable for aiding and abetting violations of Section 632 by the third-party vendors.

59.     Pursuant to Cal. Penal Code § 637.2, Plaintiffs and Class members have been injured by the violations of Cal. Penal Code § 635, and each seek damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

60.     Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## COUNT III
### Violation of the Maryland Wiretapping and Electronic Surveillance Act
### Md. Code, Cts. & Jud. Proc. Code Sec. 10-401, et seq
### (Maryland Sub-Class)

61.     Plaintiff D.G. repeats the allegations contained in the paragraphs above as if fully set forth herein.

62.     Plaintiff D.G. brings this Count individually and on behalf of the members of the Maryland Subclass.

63.     Maryland's Wiretapping and Electronic Surveillance Act ("MWESA") makes it unlawful to: (1) willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; (2) willfully disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle; or (3) willfully use, or endeavor to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication." Md. Cts. & Jud. Proc. Code Sec. 10-402.

64.    Under the MWESA, "willfully" is defined as "an intentional violation or a reckless disregard of a known legal duty." *Benford v. Am. Broadcasting Co.*, 649 F. Supp. 9, 10 (D. Md. 1986).

65.    "Electronic Communication" is defined as "[a]ny transfer of signals, writings, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system." Md. Code. Cts. & Jud. Proc. Sec. 10-401(5)(i).

66.    "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Md. Code Cts. & Jud. Proc. Sec. 10-401(4).

67.    "Contents" is defined as "any information concerning the identity of the parties to the communication or the existence, substance, purport, or meaning of that communication." Md. Code Cts. & Jud. Proc. Sec. 10-401(7).

68.    As alleged above, third parties, including Facebook and LeadID, intercepted Plaintiff D.G.'s and Maryland Subclass members' electronic communications.

69.    Plaintiff D.G.'s and Maryland Subclass members' electronic communications were intercepted in Maryland.

70.    At all relevant times, Defendant procured third parties, including Facebook and LeadID, to intercept Plaintiff D.G.'s and Maryland Subclass members' communications with life.selectquote.com. Plaintiff D.G. and Maryland Subclass members did not consent to such interceptions.

71.    Defendant sought to profit and in fact did profit off procuring the interception of Plaintiff D.G.'s and the Maryland Subclass members' electronic communications while intentionally or recklessly disregarding its own legal duty.

72.     The interception of Plaintiff D.G.'s and Maryland Subclass members personally identifying information and protected health information constitutes an invasion of privacy sufficient to confer Article III standing.

73.     Plaintiff D.G. and Maryland Subclass members seek all relief available under Md. Code Cts. & Jud. Proc. Secs. 10-410(a)(1)-(3), including statutory damages of $100 per day for each day or violation or $1,000, whichever is higher, punitive damages, and reasonable attorneys' fees and costs.

**COUNT IV**
**Violation of the Massachusetts Wiretapping Statute**
**(Mass. Gen. Laws ch. 272, § 99)**
**(Massachusetts Subclass)**

74.     Plaintiff M.F. repeats the allegations contained in the paragraphs above as if fully set forth herein.

75.     Plaintiff M.F. brings this Count individually and on behalf of the members of the Massachusetts Subclass.

76.     The express legislative purpose of Mass. Gen. Laws ch. 272, § 99's unequivocal ban on secret recordings is to protect Massachusetts citizens' privacy. In fact, the Massachusetts Wiretap Statute's preamble states that secret recording "pose[s] grave dangers to the privacy of all citizens of the commonwealth." Mass. Gen. Laws ch. 272, § 99(A).

77.     The Massachusetts Wiretap Statute prohibits the interception, attempted interception, use, or disclosure of any oral or wire communications which violates personal, property, or privacy interests. Mass. Gen. Laws ch. 272, § 99(C).

78.     "Interception" means to "secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication." Mass. Gen. Laws ch. 272, § 99(B)(4).

79.     The term "[c]ontents" means "any information concerning the identity of the parties to such communication or the existence, contents, substance, purport, or meaning of that communication."  Mass. Gen. Laws ch. 272, § 99(B)(5).

80.     "Intercepting device" means "any device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire or oral communication other than a hearing aid or similar device which is being used to correct subnormal hearing to normal and other than any telephone or telegraph instrument, equipment, facility, or a component thereof, (a) furnished to a subscriber or user by a communications common carrier in the ordinary course of its business under its tariff and being used by the subscriber or user in the ordinary course of its business; or (b) being used by a communications common carrier in the ordinary course of its business."  Mass. Gen. Laws ch. 272, § 99(B)(3).

81.     "Wire communication" means "***any communication*** made in whole or in part through the use of facilities for the transmission of communications by the ***aid of wire, cable, or other like connection*** between the point of origin and the point of reception."  Mass. Gen. Laws ch. 272, § 99(B)(1) (emphasis added).

82.     "Person" means "any individual, partnership, association, joint stock company, trust, or corporation, whether or not any of the foregoing is an officer, agent or employee of the United States, a state, or a political subdivision of a state."  Mass. Gen. Laws ch. 272, § 99(B)(13).

83.     "Use" includes "willfully us[ing] or attempt[ing] to use the contents of any wire or oral communication, knowing that the information was obtained through interception."  Mass. Gen. Laws ch. 272, § 99(C)(3)(b).

84.     SelectQuote is a "person" for the purposes of the Massachusetts Wiretap Statute because it is a corporation.

85.    The tracking technology offered by Facebook and LeadID is an "intercepting device" within the meaning of the Statute.  Mass. Gen. Laws ch. 272, § 99(B)(3).

86.    Plaintiff M.F.'s and Massachusetts Subclass members' communications constitute "content" within the meaning of the Massachusetts Wiretap Statute.

87.    SelectQuote intentionally used software provided by Facebook and LeadID to intercept Plaintiff M.F.'s and Massachusetts Subclass members' electronic communications. Because of SelectQuote's assistance, Facebook and LeadID intercepted these communications automatically, secretly, and contemporaneously.

88.    Plaintiff M.F. and Massachusetts Subclass members never gave consent to SelectQuote to intercept their communications.

89.    Pursuant to Mass. Gen. Laws ch. 272, § 99(Q), Plaintiff M.F. and Massachusetts Subclass members seek (1) actual damages, not less than liquidated damages computed at the rate of $100 per day for each violation or $1,000, whichever is higher; (2) punitive damages; (3) declaratory relief; (4) injunctive relief; and (5) reasonable attorneys' fees and other litigation costs incurred.

**COUNT V**
**Violation of the Massachusetts Unfair and Deceptive Business Practices Act,**
**Mass. Gen. Laws Ch. 93A, *et seq.***
**(Massachusetts Class)**

90.    Plaintiff M.F. repeats the allegations contained in this paragraph above as if fully set forth herein.

91.    Section 2 of Chapter 93—the Massachusetts Unfair and Deceptive Business Practices Act ("MUDBPA")—prevents the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce."  An act is "deceptive" under Chapter 93A "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991).

92.    It is "the intent of the legislature that in construing" whether an act is deceptive under 93A § 2, "the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended." *See* Mass. Gen. Laws Ann. ch. 93A, § 2.

93.    Section 9 provides: "Any person … who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two … may bring an action in the superior court … for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper … Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons."

94.    Pursuant to the definitions codified at Chapter 93A § 1, Defendant is a "person," and Defendant is engaged in "trade" and "commerce" in Massachusetts by offering for life insurance policies for sales.  These offerings directly or indirectly affect the people of Massachusetts.  Defendant also resides in Massachusetts, and the acts and omissions alleged above and incorporated herein originated from Massachusetts.

95.    By engaging in the acts and omissions alleged above and incorporated herein, Defendant has engaged and continues to engage in unfair or deceptive acts or practices in the conduct of trade or commerce.

96.    Defendant represented, for example, that Plaintiff's information was "100% secure."  Despite this, Defendant disclosed Plaintiff's sensitive information to two unrelated entities, Facebook and LeadID.

97.   Defendant's misrepresentation had the tendency to deceive a reasonable consumer and the general public.

98.   Defendant's acts and omissions are material; a reasonable person would attach importance to the information and would be induced to act on the information when deciding whether to receive a quote for life insurance.  Indeed, Plaintiff and members of the Massachusetts Subclass relied on Defendant's representations when disclosing sensitive information through the application process.

99.   Had Plaintiff and Massachusetts Subclass members been aware that Defendant misrepresented the security of their information, they would have refrained from completing an application for life insurance.

100.   At a minimum, Plaintiff and the Massachusetts Subclass members are entitled to a record of actual damages or twenty-five dollars, whichever is greater.

101.   Defendant willfully and knowingly misrepresented the security of information that Plaintiff and Massachusetts Subclass members disclosed.  As such, Plaintiff are entitled to recover up to the three times the amount of actual damages or statutory damages, whichever is greater.   Plaintiff and Massachusetts Subclass members may also recover attorneys' fees and costs.

## COUNT VI
### Violation of Florida Security of Communications Act
### Fla. Stat. § 934.01, *et seq.*
### (Florida Class)

102.   Plaintiff T.M. repeats the allegations contained in the paragraphs above as if fully set forth herein.

103.   Plaintiff brings this Count individually and on behalf of the members of the Florida Subclass.

104.   The Florida Security of Communications Act ("FSCA") prohibits: (1) the interception or procurement of another to intercept any wire, oral or electronic communication; (2) the intentional disclosure of the contents of any wire, oral or

electronic communication that the discloser knew or should have known was obtained through the interception of a wire, oral or electronic communication; and (3) the intentional use of the contents of any wire, oral or electronic communication that the discloser knew or should have known was obtained through the interception of a wire, oral or electronic communication.  Fla. Stat. 934.03(1).

105.   Any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, a wire, oral or electronic communication in violation of the FSCA is subject to a civil action for: (1) actual damages, not less than liquidated damages computed at a rate of $100 per day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred.  Fla. Stat. 934.10.

106.   At all relevant times, Defendant procured Facebook and LeadID to contemporaneously track and intercept Plaintiff's and Class members' internet communications while navigating its website.  Defendant procured Facebook and LeadID to contemporaneously intercept these communications without authorization and consent from Plaintiff and Class members.

107.   Defendant intended Facebook and LeadID to contemporaneously learn the meaning of the content of Plaintiff T.M.'s and Florida Subclass members' communications.

108.   Plaintiff T.M. and Florida Subclass members had a justified and reasonable expectation that their electronic communications would not be intercepted.

109.   Plaintiff T.M. and Florida Subclass members were unaware that Facebook and LeadID were intercepting their electronic communications.

110.   The tracking technologies offered by Facebook and LeadID constitute devices through which the contents of a wire, oral and electronic communication can be acquired, including the contents of Plaintiff T.M.'s and Florida Subclass members' communications.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs representatives of the Class and Subclasses, and naming Plaintiffs' attorneys as Class Counsel to represent the Classes;

b.   For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d.   Award compensatory damages, including statutory damages where available, to Plaintiffs and the Class members against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial;

e.   For punitive damages, as warranted, in an amount to be determined at trial;

f.   Ordering Defendant to disgorge revenues and profits wrongfully obtained;

g.   For prejudgment interest on all amounts awarded;

h.   For injunctive relief ordering Defendant to immediately cease its illegal conduct;

i.   For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit; and

j.   Grant Plaintiffs and the Class members such further relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims so triable in this action.

1     Dated: December 11, 2023       Respectfully submitted,

2                                           **BURSOR & FISHER, P.A.**

3                                           By:_____*L. Timothy Fisher*_____

4

5                                           L. Timothy Fisher (State Bar No. 191626)

6                                           1990 North California Blvd., Suite 940
                                          Walnut Creek, CA 94596

7                                           Telephone: (925) 300-4455
                                          Facsimile: (925) 407-2700

8                                           Email: ltfisher@bursor.com

9                                           *Attorney for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28