1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

James F. Monagle, Esq. (SBN 236638)
MULLEN COUGHLIN LLC
500 Capitol Mall, Suite 2350
Sacramento, CA 95814
Telephone: 267-930-1529
Facsimile:  267-930-4771
jmonagle@mullen.law
*Attorneys for Defendant*,
*SelectQuote Insurance Services*

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.S., *et al.*,<br><br>    Plaintiffs,<br><br>            v.<br><br>SELECTQUOTE INSURANCE SERVICES,<br><br>    Defendant. | Case No.: 3:23-cv-02258-RBM-MSB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>**Honorable Ruth Bermudez Montenegro, U.S.D.J.**<br>**Hearing Date:**<br>**Hearing Time:** |

1

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

# <u>TABLE OF CONTENTS</u>

I. INTRODUCTION .................................................................... 1

II. BACKGROUND ................................................................... 2

III. PLAINTIFFS' CLAIMS DO NOT DEMONSTRATE STANDING ............... 5

IV. PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE WIRETAPPING
ACTS ............................................................................... 12

A. Standard of Review ....................................................... 12

B. Plaintiffs Fail to Plead the Necessary Elements to Assert Claims Under the
Wiretapping Acts ........................................................... 12

    1. Plaintiffs Do Not Plausibly Allege an "Interception" ............... 14

    2. Plaintiffs Fail to Allege the "Contents" of Any Communications Were
Intercepted ............................................................. 16

    3. Plaintiffs Fail to Allege that a "Device" Was Used to Intercept Their
Communications. ...................................................... 18

    4. Plaintiffs Consented to the Disclosure of Their Information .......... 20

    5. Plaintiffs' CIPA § 632 Claim Fails Because Plaintiffs' Interactions with
the Site Do Not Constitute Confidential Communications ............ 21

V. PLAINTIFFS' MACPA CLAIM MUST BE DISMISSED ..................... 22

VI. CONCLUSION.................................................................. 25

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................ 12

*Campbell v. Facebook, Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ............................................. 22

*Cardoso v. Whirlpool Corp.*,
   2021 WL 2820822 (S.D. Fla. July 6, 2021) .......................... 2, 16, 19

*Commonwealth v. Byrd*,
   235 A.3d 311 (Pa. 2020) ................................................................ 21

*Commonwealth v. Diego*,
   119 A.3d 370 (Pa. Super. 2015) ..................................................... 19

*Cook v. GameStop, Inc.*,
   2023 WL 5529772 (W.D. Pa. Aug. 28, 2023) ...................... 1, 17, 18

*Copeland v. Techtronics Indus. Co., Ltd.*,
   95 F. Supp. 3d 1230 (S.D. Cal. 2015) .............................................. 3

*Cousin v. Sharp Healthcare*,
   2023 WL 4484441 (S.D. Cal. July 12, 2023) .................................... 7

*Dumont v. Reily Foods Co.*,
   934 F.3d 35 (1st Cir. 2019) ............................................................ 23

*Eisenberg v. BBVA USA*,
   2021 WL 5177773 (S.D. Cal. July 12, 2021) .................................... 6

*Ellsworth v. Schneider Nat'l Carriers, Inc.*,
   2021 WL 6102514 (C.D. Cal. Oct. 28, 2021) .................................... 6

*Four Navy Seals v. Associated Press*,
   413 F. Supp. 2d 1136 (S.D. Cal. 2005) ...................................... 9, 21

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

*Goldstein v. Costco Wholesale Corp.*,
  559 F. Supp. 3d 1318 (S.D. Fla. 2021) .............................................. 2, 17

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) .............................................. 2, 17

*Hernandez v. Noom, Inc.*,
  2023 WL 8934019 (D. Md. Dec. 27, 2023) ...................................... 1, 8

*In re BPS Direct, LLC*,
  2023 WL 8458245 (E.D. Pa. Dec. 5, 2023) ...................................... 1, 8

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3d Cir. 2015).................................................................. 17

*In re Google Location Hist. Litig.*,
  428 F. Supp. 3d 185 (N.D. Cal. 2019) .................................................. 19

*In re Google, Inc. Priv. Pol'y Litig.*,
  2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) (dismissing ................................ 11

*In re Meta Pixel Healthcare Litig.*,
  2022 WL 17869218 (N.D. Cal. 2022) ..................................................... 13

*In re Zynga Priv. Litig.*,
  750 F.3d 1098, 1108 (9th Cir. 2014)...................................................... 17

*Jacome v. Spirit Airlines Inc.*,
  2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ........................................ 18, 19

*Johnson v. Blue Nile, Inc.*,
  2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ................................................ 2

*KPS & Assocs., Inc. v. Designs by FMC, Inc.*,
  318 F.3d 1 (1st Cir. 2003)........................................................................ 23

*Licea v. Am. Eagle Outfitters, Inc.*,
  2023 WL 2469630 (C.D. Cal. Mar. 7, 2023)................................................ 1, 14

*Lightoller v. Jetblue Airway Corp.*,
  2023 WL 3963823 (S.D. Cal. June 12, 2023)............................................... 11

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

*Lloyd v. Facebook, Inc.*,
    2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) ...................................................... 11

*Low v. LinkedIn Corp.*,
    900 F.Supp.2d 1010 (N.D. Cal. 2012) ........................................................ 9, 10

*Martin v. Sephora USA, Inc.*,
    2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) .................................................. 1

*Massie v. General Motors LLC*,
    2022 WL 534468 (D. Del. Feb. 17, 2022) ........................................................ 8

*Mikulsky v. Noom, Inc.*,
    2024 WL 251171 (S.D. Cal. Jan. 22, 2024) ...................................................... 8

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
    2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ................................................ 19

*Offley v. Fashion Nova, LLC*,
    2023 WL 6201558 (D. Mass. Sept. 22, 2023) ................................................ 23

*O'Leary v. TrustedID, Inc.*,
    60 F.4th 240 (4th Cir. 2023) .................................................................... 7, 9

*People v. Nakai*,
    183 Cal. App. 4th 499 (2010) ...................................................................... 21

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ........................................................ 20

*Popa v. Harriet Carter Gifts, Inc.*,
    426 F.Supp.3d 108 (W.D. Pa. 2019) ............................................................ 11

*Price v. Carnival Corp.*,
    2024 WL 221437, n.4 (S.D. Cal. Jan. 19, 2024) ....................................... 12, 14

*Revitch v. New Moosejaw, LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ................................................ 22

*Rodriguez v. Google LLC*,
    2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .................................................. 15

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

*Rosenow v. Facebook, Inc.*,
  2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ...................................................... 15

*Silver v. Stripe Inc.*,
  2021 WL 3191752 (N.D. Cal. 2021) ........................................................... 13, 20

*Smith v. Facebook, Inc.*,
  745 F. App'x 8 (9th Cir. 2018) .................................................................. 20

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .............................................................................. 5

*Straubmuller v. Jetblue Airways Corp.*,
  2023 WL 5671615 (D. Md. Sept. 1, 2023) ..................................................... 1, 8

*Sud v. Costco Wholesale Corp.*,
  229 F. Supp. 3d 1075 (N.D. Cal. 2017) ........................................................ 25

*Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*,
  830 F. App'x 821 (9th Cir. 2020) ................................................................ 8

*Swiggum v. EAN Servs., LLC*,
  2021 WL 3022735 (M.D. Fla. July 16, 2021) .................................................... 2

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ......................................................................... 5, 6, 9, 10

*U.S. v. Lifshitz*,
  369 F.3d 173 (2d Cir. 2004) ................................................................... 9, 21

*U.S. v. Taylor*,
  935 F.3d 1279 (11th Cir. 2019) ................................................................. 10

*Valenzuela v. Keurig Green Mountain, Inc.*,
  2023 WL 3707181 (N.D. Cal., May 24, 2023) .................................................. 16

*Valenzuela v. Super Bright LEDs Inc.*,
  2023 WL 8424472 (C.D. Cal., Nov. 27, 2023) .................................................. 15

*Warren v. Fox Family Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ................................................................... 8

*Williams v. What If Holdings, LLC*,
  2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....................................................... 2

*Zepeda v. Paypal, Inc.*,
  777 F. Supp. 2d 1215 (N.D. Cal. 2011) ............................................................. 23

## **Statutes**

18 U.S.C. § 2510(8) ....................................................................................... 16

Cal. Penal Code § 631 ......................................................... 1, 13, 14, 16, 18

Cal. Penal Code § 632 .................................................................. 20, 21, 22

Fla. Stat. § 934.02 ........................................................................................ 13

Fla. Stat. §§ 934.03 ............................................................................. 1, 13, 14

Mass. Gen. Laws Ann. ch. 272 § 99 ...................................... 1, 13, 14, 20

Mass. Gen. Laws Ch. 93A ................................................................... 1, 23

Md. Code Ann., Cts. & Jud. Proc. § 10-401 ................................... 1, 13

Md. Code Ann., Cts. & Jud. Proc. § 10-402 ...................... 13, 14, 20

## **Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................. 2, 12, 22

vi

## I.  INTRODUCTION

This action is one of many similar putative class actions filed in the last year throughout this Circuit and the country alleging that Defendants like SelectQuote Insurance Services ("SelectQuote") have engaged in wiretapping by collecting website usage analytics commonly used by countless companies to market and improve their websites.  Plaintiffs' Complaint alleges that SelectQuote violated several states' wiretapping statutes, including the California Invasion of Privacy Act ("CIPA," Cal. Penal Code §§ 631, 632), the Maryland Wiretapping and Electronic Surveillance Act ("MWESA," Md. Code Ann., Cts. & Jud. Proc. § 10-401, *et seq*.), the Florida Security of Communications Act ("FSCA," Fla. Stat. § 934.03), and the Massachusetts Wiretapping Statute ("MAWS," Mass. Gen. Laws Ann. ch. 272 § 99) (collectively, the "Wiretapping Acts"), as well as the Massachusetts Consumer Protection Act ("MACPA," Mass. Gen. Laws Ch. 93A, *et seq.*), by using website technologies allegedly provided by LeadID LLC ("LeadID") and Meta  Platforms, Inc. ("Facebook").  As many courts have recognized, these claims are meritless and should be dismissed with prejudice.[1]

---

[1] *See*, *e.g.*, *In re BPS Direct, LLC*, 2023 WL 8458245 (E.D. Pa. Dec. 5, 2023); *Hernandez v. Noom, Inc.*, 2023 WL 8934019 (D. Md. Dec. 27, 2023); *Straubmuller v. Jetblue Airways Corp.*, 2023 WL 5671615 (D. Md. Sept. 1, 2023); *Cook v. GameStop, Inc.*, 2023 WL 5529772 (W.D. Pa. Aug. 28, 2023); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023); *Licea v. Am. Eagle*

1

This Court should not credit the Complaint, which is threadbare on facts yet replete with legal conclusions and bald assertions, as Plaintiffs seek to monetize criminal statutes to impose liability on SelectQuote for the use of commonplace internet technologies. The use of these technologies is widely accepted, disclosed by SelectQuote, and consented-to by users like Plaintiffs. Accordingly, Plaintiffs' Complaint fails to plead any of their six claims, and must be dismissed pursuant to Rule 12(b)(6). However, the Court need not assess substantive deficiencies, as subject matter jurisdiction does not exist because Plaintiffs lack Article III standing. Thus, the Complaint warrants dismissal on multiple independent bases.

## II.    BACKGROUND

SelectQuote is a life insurance service provider. (Complaint ("Compl."), ECF No. 1, at ¶ 2). SelectQuote owns and operates the publicly accessible website life.selectquote.com (the "Site"), which prospective customers can visit to obtain a quote for a life insurance policy. (*Id.* at ¶¶ 2-3). Included on each page of the Site is a hyperlink to SelectQuote's Privacy Policy to inform visitors that: (1) by using

---

*Outfitters, Inc.*, 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023); *Williams v. What If Holdings, LLC*, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318 (S.D. Fla. 2021); *Swiggum v. EAN Servs., LLC*, 2021 WL 3022735 (M.D. Fla. July 16, 2021); *Cardoso v. Whirlpool Corp.*, 2021 WL 2820822 (S.D. Fla. July 6, 2021); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021).

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

the Site and submitting information to obtain a life insurance policy quote, the user thus "explicitly agree[s] to the terms and conditions of the Privacy Policy;" (2) information users provide to the Site is voluntary and is only collected if a user agrees to voluntarily provide it, such as through the "Get Your Free Quote" or similar pages; and (3) information collected includes personal information.[2]  The Privacy Policy clearly informs visitors that SelectQuote uses analytics technologies to collect users' information. The Privacy Policy further informs customers that their information may be shared with third parties for various purposes, including marketing services.  The Privacy Policy further discloses that SelectQuote uses the technologies to collect this information for the purposes of assessing the performance of the Site and services offered, to improve the functionality of the Site and the services offered, and to provide services to customers.

Plaintiffs A.S., D.G., M.F., and T.M. (collectively "Plaintiffs") allege that at various times throughout 2023 they each visited the Site to apply for life insurance

---

[2] Given the Complaint repeatedly references and relies on SelectQuote's website as the basis for the claims, going so far as to include purported screen shots from the website, it is entirely appropriate that the Court consider the website as a whole, including SelectQuote's Privacy Policy.  *Copeland v. Techtronics Indus. Co., Ltd.*, 95 F. Supp. 3d 1230, 1236-37 (S.D. Cal. 2015).  For reference, the following link leads to the Privacy Policy for the Court's reference: https://www.selectquote.com/privacy?pass_sid=c953b3-c00f-8fb1b1&first_url=https%3A%2F%2Fwww.selectquote.com%2F&pass_cid=6LCMNDY0000000000000&sCode=UCMS .

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

policies while they were each located in their respective states of domicile. (Compl. at ¶¶ 8-11). Plaintiffs all allege they entered their names, dates of birth, gender, and email addresses on the Site, as well as certain health information (diagnoses of diabetes, cancer, high blood pressure, depression, and anxiety) by clicking buttons on the Site, and allege the information was then shared with third-party vendors Facebook and LeadID. (*Id.* at ¶¶ 8-11, 16-25, 28-31). In short, Plaintiffs claim their mouse movements, clicks, keystrokes, text entries, and similar information of the customer's navigation and interaction with the Site was captured and shared with Facebook and LeadID. However, the Complaint fails to explain how such information was allegedly transferred, as no allegations indicate the Site had code embedded in it from Facebook or LeadID to transmit data.[3] Indeed, no technical or general explanation is given regarding how any third parties "intercepted" data.

In general, the Complaint merely presents conclusory allegations and anecdotal references to Facebook and LeadID, such as, "SelectQuote assist[ed] third parties with intercepting every one of these transmissions." (Compl. at ¶ 27).

---

[3] The sole exception to this point is Plaintiffs' MAWS claim, which alone claims, in conclusory terms, that SelectQuote used "software" from Facebook and LeadID to intercept Plaintiff M.F.'s and Massachusetts Subclass members' electronic communications. (*Id.* at ¶ 87). Insofar as the Court may be inclined to credit this bald assertion, it should only be applied to the MAWS claim as this is the only cause of action for which this averment is plead.

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

Although Plaintiffs claim Facebook "***allows***" companies like SelectQuote to "integrate software into their websites" that tracks user activity like button clicks and forms completed, and relay that information back to Facebook for use with existing datasets companies use to run advertisements, there are no allegations that SelectQuote in fact did so.  (*Id.* at ¶ 30 (emphasis added)).  Likewise, there are no allegations regarding LeadID other than the claim that "LeadID intercept[ed] Plaintiffs' communications, [and then] the company assimilates that information into audiences that Defendant uses to run advertisements." (*Id.* at ¶ 31).

## III.  PLAINTIFFS' CLAIMS DO NOT DEMONSTRATE STANDING

As a threshold matter of subject matter jurisdiction, challenged under Rule 12(b)(1), Plaintiffs bear the burden of demonstrating they have Article III standing. Thus, they must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339.  Under Article III, "an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (citation omitted).  "Traditional tangible harms," such as physical and

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

monetary harms, qualify as "concrete" injuries. *Id.* at 425. So do certain "intangible harms" that have a "*close relationship* to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* (emphasis added).

In *TransUnion*, the Supreme Court significantly narrowed the grounds for asserting Article III standing where the purported injury is primarily statutory. Indeed, the Court "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 426; *see also Eisenberg v. BBVA USA*, 2021 WL 5177773, at *2 (S.D. Cal. July 12, 2021) ("a pure procedural violation--on its own--is insufficient"). Here, Plaintiffs have not alleged facts showing they suffered an "injury in fact" to support Article III standing. *TransUnion*, 594 U.S. at 424-25.

First, under *TransUnion*, simply alleging the elements of any of the Wiretapping Acts claims—the alleged recording of a communication without consent—is insufficient to satisfy Plaintiffs' burden of establishing an Article III injury in fact. *TransUnion*, 594 U.S. at 427 ("an injury in law is not an injury in fact"); *see Ellsworth v. Schneider Nat'l Carriers, Inc.*, 2021 WL 6102514, at *5 (C.D. Cal. Oct. 28, 2021) (holding that a statutory violation of the FCRA did not establish standing because "Plaintiff does not claim that the publication of the

6

allegedly inaccurate information caused him to suffer any harm—reputational or otherwise"). Applying these principles here, Plaintiffs' FSCA, MACPA, MAWS, and CIPA (Count II) claims do not hint at an injury beyond a mere statutory violation. (Compl. ¶¶ 56-60, 74-110). While both Plaintiffs' MWESA and CIPA claims allege a loss of privacy (and the CIPA claim avers a diminishment in value of Plaintiffs' personal information), there are no facts presented to support these bald conclusions.[4] (Compl. ¶¶ 46-55, 61-73); *see O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 244-45 (4th Cir. 2023) (holding that abstract statutory privacy injuries are insufficient to establish standing); *see also Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *3 (S.D. Cal. July 12, 2023) (though the plaintiffs allege[d] in a conclusory manner that the defendant disclosed their personal, confidential, and sensitive medical information to Meta, including "communications and messages with doctors; medical test results; payment information; and, password reset information. ... these allegations are conclusory and devoid of any factual support."). Instead, Plaintiffs' claims are mere recitations of the Wiretapping Acts' elements and definitions plead out in conclusory form.

---

[4] Indeed, in a blatant legal conclusion, Plaintiffs' MWESA claim alleges an "invasion of privacy [that] constitutes Article III standing." (Compl. ¶ 72).

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

As explained above, despite Plaintiffs' allegations that SelectQuote: (1) "share[d] highly sensitive information with several third parties," Compl. ¶ 4; (2) shared "health information" with third parties, *id.* ¶¶ 5-6; (3) broke promises to Plaintiffs and intruded into their privacy, *id.* ¶ 7; and (4) assisted third parties with intercepting sensitive information, *id.* ¶¶ 8-11, no specific allegations explain how SelectQuote purportedly did any of this. Even assuming *arguendo* that the allegations are accepted at face value,[5] the Complaint does not articulate a harm beyond statutory violations because: (1) there are no allegations that the Site contained software that transmitted data to Facebook and LeadID, making the invasion of privacy facially impossible, and (2) the alleged data purportedly captured and shared by SelectQuote amounts to nothing more than mouse movements, clicks, keystrokes, text entry, and similar information regarding the customer's navigation and interaction with the Site.[6] These allegations do not establish an injury in fact.

---

[5] "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). On a facial attack, as is the case at bar, the Court accepts as true only the "well-pleaded factual allegations" of the Complaint and need not credit Plaintiffs' bald assertions. *Superama Corp., Inc. v. Tokyo Broad. Sys. Television, Inc.*, 830 F. App'x 821, 822 (9th Cir. 2020).
[6] A number of courts, assessing the very statutes at issue here and considering similar analytics software, have held that information captured by software is insufficient to support Article III standing. *E.g.*, *Mikulsky v. Noom, Inc.*, 2024 WL

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Second, Plaintiffs' allegations that they clicked boxes on the Site regarding personal and "health information" makes no substantive difference. (Compl. ¶¶ 4-11, 16-31, 51-54, 57-58, 68-72, 85-88, and 106-110). For "intangible harms," like the alleged loss of privacy, to rise to the level of an Article III injury, they must bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 425; *see also O'Leary*, 60 F.4th at 245.

Plaintiffs are likely to try to compare their allegations to the common law tort of intrusion upon seclusion, but that proposed analogue is inapplicable. To be actionable, the tort of intrusion upon seclusion requires an intentional "intrusion into a private place, conversation or matter," where there was a "reasonable expectation of privacy," "in a manner highly offensive." *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1025 (N.D. Cal. 2012). Moreover, in assessing such a claim, this Court holds that one cannot have an "objectively reasonable expectation of privacy" in transmitting data over the internet. *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1146-47 (S.D. Cal. 2005) (citing *U.S. v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004) (stating that individuals may not reasonably expect

---

251171 (S.D. Cal. Jan. 22, 2024); *Hernandez*, 2023 WL 8934019; *In re BPS Direct, LLC*, 2023 WL 8458245; *Straubmuller*, 2023 WL 5671615; *Massie v. General Motors LLC*, 2022 WL 534468 (D. Del. Feb. 17, 2022).

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

privacy when transmitting data over the internet)).  With these principles in mind, there can be no comparison to common law intrusion upon seclusion claims. Plaintiffs voluntarily provided their information on SelectQuote's public website and Plaintiffs do not claim that they had not previously shared the information at issue publicly or with Facebook and LeadID.  Indeed, the Complaint does not suggest Plaintiffs had a reasonable expectation of privacy on the Site, which is located on the "public highways" of the open internet and can be accessed by anyone, anywhere with a browser.  *U.S. v. Taylor*, 935 F.3d 1279, 1284 n.4 (11th Cir. 2019).  Plaintiffs also fail to articulate whether they used a personal or work computer, a public computer, or any other device to access the Site – all facts within Plaintiffs control.  Accordingly, Complaint does not come near to clearing the "high bar" that "[t]he California Constitution and the common law set . . . for an invasion of privacy claim," (*see Low*, 900 F. Supp. 2d at 1025), and Plaintiffs' claims thereby do not share a close relationship with an intrusion tort to support a violation of Plaintiffs' right to privacy occurred.  *TransUnion*, 594 U.S. at 424-25.

The deficiencies in the Complaint are further underscored by the Site's Privacy Statement, which discloses the precise practices that Plaintiffs now claim as actionable.  For example, the Privacy Policy clearly states SelectQuote utilizes analytics technologies and discloses information that is voluntarily shared by

10

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

visitors to the Site with third parties who perform marketing services, among other functions. There can be no expectation of privacy when the Site (via the Privacy Policy) fully disclosed to Plaintiffs that they should have no such expectation, and courts have routinely rejected intrusion upon seclusion claims based on similar disclosures. *See, e.g., Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *10 (N.D. Cal. Oct. 3, 2022) (no reasonable expectation of privacy in browsing activity where Facebook's Data Policy disclosed that third-parties provide information to Facebook about its users' off-Facebook activity); *In re Google, Inc. Priv. Pol'y Litig.*, 2013 WL 6248499, at *16 (N.D. Cal. Dec. 3, 2013) (dismissing claim where challenged data collection was disclosed).

Because Plaintiffs' thin and conclusory allegations are not closely tied to any recognized common law harm, this suit should be dismissed for lack of standing. *See Lightoller v. Jetblue Airway Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (no standing for CIPA claim where website software allegedly collected "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time"); *see also Popa v. Harriet Carter Gifts, Inc.*, 426 F.Supp.3d 108, 122-23 (W.D. Pa. 2019) (collecting "keystrokes, mouse clicks, and PII is simply not the type of highly offensive act to which liability can attach").

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

## IV.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE WIRETAPPING ACTS

Just as Plaintiffs' allegations do not support Article III standing, they likewise fail to make out plausible claims under any of the Wiretapping Acts.

### A.    Standard of Review

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (requiring more than a "sheer possibility," "naked assertion," "labels and conclusions," or "a formulaic recitation of the elements"). Rather, the complaint must allege a factual basis for each element of each cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 687 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice … While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Plaintiffs' claims therefore fail for a number of independent reasons.

### B.    Plaintiffs Fail to Plead the Necessary Elements to Assert Claims Under the Wiretapping Acts

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

Although Plaintiffs bring claims under four separate wiretapping statutes, all of the statutes derive from the Federal Wiretap Act, which courts have recognized has similar essential elements to the Wiretapping Acts. *See Price v. Carnival Corp.*, 2024 WL 221437, at *2, n.4 (S.D. Cal. Jan. 19, 2024) (noting that the MAW, MWESA, CIPA, the Pennsylvania Wiretap Act, and the Federal Wiretap Act have substantively similar requirements and are treated by courts as largely analogous and read *in pari materia*); *see also Silver v. Stripe Inc.*, 2021 WL 3191752, at **1-5 (N.D. Cal. 2021) (assessing whether consent, as an element, was sufficiently presented to defeat the plaintiffs' CIPA, FSCA, and Washington Wiretap Act claims). In short, insofar as the four Wiretapping Acts at issue share certain essential elements, SelectQuote addresses them in concert, explaining why Plaintiffs fail to demonstrate each of the following elements: whether Plaintiffs' interactions with the Site constitute electronic communications whose "contents" were unlawfully "intercepted" by a "device" within the meaning and scope of the various Wiretapping Acts. Fla. Stat. §§ 934.02, 934.03; Md. Code Ann., Cts. & Jud. Proc. §§ 10-401, 10-402; Mass. Gen. Laws Ann. Ch. 272 §§ 99(B), 99(C); Cal. Penal Code §§ 631, 632; *see also In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *10 (N.D. Cal. 2022) (noting that a plaintiff must plead under Federal Wiretapping Act claim and a CIPA claim that the defendant (1) acted without

13

consent, "([2]) intentionally intercepted ([3]) the contents of plaintiffs' electronic communications ([4]) using a device."). Here, Plaintiffs do not plead facts establishing these elements and more.

**1.     Plaintiffs Do Not Plausibly Allege an "Interception"**

All four of the Wiretapping Acts only prohibit the unauthorized "interception" of a communication.[7] Yet the Complaint fails to plead beyond conclusory allegations that Plaintiffs' communications with the Site were "intercepted," which fails to satisfy the pleading standards for this essential element. *Licea*, 2023 WL 2469630, at *9 (noting that "[c]ourts in the Ninth Circuit have interpreted the in transit requirement narrowly").

Here, Plaintiffs allege an "interception" in conclusory terms that do not satisfy *Iqbal* or *Twombly*. Plaintiffs merely state that: (1) "Unbeknownst to Plaintiff, SelectQuote assisted third parties with intercepting this sensitive information," Compl. ¶¶ 8-11; (2) "Unbeknownst to users, however, SelectQuote has built its website to allow third parties to surreptitiously intercept the information

---

[7] The terms "intercept" under the FSCA, Fla. Stat. § 934.03, the MWESA, Md. Code Ann., Cts. & Jud. Proc. § 10-402, and the MAWS, Mass. Gen. Laws Ann. ch. 272 § 99(C), and "in transit" under CIPA, Cal. Penal Code § 631(a), are interpreted coextensively. *See Price*, 2024 WL 221437, at *5 (assessing the element of intercepted which it found to be a common element under MAW, MWESA, the Pennsylvania Wiretap Act, and the Federal Wiretap Act and applicable to the "in transit" element of CIPA).

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

they input," *id.* ¶ 16; (3) "Unbeknownst to users, however, SelectQuote assists third parties with intercepting every one of those communications," *id.* ¶ 27; and (4) "SelectQuote aided, agreed with, and conspired with third parties to track and intercept … The third parties intercepted these communications," *id.* ¶ 51 (see also ¶¶ 68-72, 87-88, and 106-109).  But just "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [SelectQuote] is intercepting [Plaintiffs'] data in transit."  *See Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022); *see also Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (allegation that defendant used an "algorithm to intercept and scan plaintiff's incoming chat messages for content during transit and before placing them in electronic storage" conclusory and failed to state a claim).  While Plaintiffs make passing reference to "tracking technologies," Compl. ¶ 110, and "software," *id.* ¶¶ 87, 30, they fail to explain how such software or technologies allegedly intercept their information, or that SelectQuote had such software installed on the Site when Plaintiffs' information was allegedly intercepted. As numerous California courts have found in similar cases, Plaintiffs' Wiretapping Acts claims should be dismissed because the allegations of an interception are conclusory and not plausible. *See Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *9 (C.D. Cal., Nov. 27, 2023)

15

(allegations that code "automatically acquires and transmits" communications "without any active input" from any human and permits a party "to secretly intercept in real time, eavesdrop upon, and store transcripts of [] chat communications with unsuspecting website visitors" did not "provide fair notice to [the defendants] of when they believe [the third party] intercepts their communications) (collecting cases); *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 3707181, at *5 (N.D. Cal., May 24, 2023) (dismissing § 631 claim, finding that bare statement that interception occurred "in real time" did "little more than restate the pleading requirement of real time interception … But the complaint provides no detail as to how the interception occurs").

## 2. Plaintiffs Fail to Allege the "Contents" of Any Communications Were Intercepted

Similar to the shortcomings regarding "interception," Plaintiffs also fail to state viable Wiretapping Acts claims by not sufficiently alleging Facebook and LeadID acquired the "contents" of any wire or oral communication. *See*, *e.g.*, *Cardoso*, 2021 WL 2820822. While content generally means the substance, purport, or meaning of a communication, *see* 18 U.S.C. § 2510(8), not all communicated data triggers wiretapping statutes. To be potentially liable, the defendant must capture "the intended message conveyed by the communication,"

16

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

like the text of an email message or words spoken on a call. *Cook,* 2023 WL 5529772 at *6. These "contents" are distinguishable from "record information" about a communication, like "extrinsic information used to route a communication," that is not actionable. *See, e.g., In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015) (Federal Wiretap Act and CIPA); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014) (Federal Wiretap Act). For example, "contents" does not include "dialing, routing, addressing, or signaling" information, such as "addresses, phone numbers, and URLs … when they are performing such a function." *In re Google*, 806 F.3d at 137 (assessing Federal Wiretap Act and CIPA claims).

Although Plaintiffs allege in conclusory fashion that SelectQuote captured personal and healthcare information, the allegations reveal that SelectQuote generally captured website visitors' mouse movements, clicks, keystrokes, and URLs of web pages visited. (*See* Compl. ¶¶ 8-11, 16-25, 28-31). Mouse movements, clicks, and keystrokes are not "contents" of a communication. Similar to a visitor's physical movements recorded through video surveillance at a physical store, a visitor's "movements" on SelectQuote's websites are not "contents" because they "d[o] not convey the substance of any particular communication." *Goldstein*, 559 F. Supp. 3d at 1321–22 (applying the same analogy and holding

17

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

mouse movements, clicks, pages visited, and keystrokes, including information allegedly input by the plaintiff, were not "contents" under Florida's wiretap statute); *see also, e.g., Cook*, 2023 WL 5529772 at *8; *Graham*, 533 F. Supp. 3d at 833 (dismissing plaintiff's wiretapping claim based on session replay "to the extent that it is predicated on noncontent information"); *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *4 (Fla. Cir. Ct. June 17, 2021) (dismissing plaintiff's wiretapping claim based on the same data because this type of information "that courts consistently find do not constitute 'contents' under the Federal Wiretap Act or any of its state analogs because it does not convey the *substance* or *meaning* of any message[,]" and collecting cases (emphasis in original)).  Because Plaintiffs have failed to allege the interception of "contents," their claims should be dismissed.

### 3. Plaintiffs Fail to Allege that a "Device" Was Used to Intercept Their Communications.

As discussed above, Plaintiffs fail to articulate by what means SelectQuote, Facebook, or LeadID purportedly intercepted their communications. Likewise, the Wiretapping Acts claims should be dismissed because they fail to articulate the use of a "device" in this purported scheme.

Although Plaintiffs resort to using conclusory terms such as software, technology, a plan, and like terminology in support of their § 631 CIPA claim, they

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

never actually claim any of this was installed on the Site or attempt to articulate this was done with SelectQuote's approval.   Simply stated, there is no identified "device" at issue to undergird Plaintiffs' claims.   Even if one of the nebulous items referenced above were claimed to be the means by which Plaintiffs' information was purportedly intercepted, none of these items qualifies as a "device" under the Wiretapping Acts. For example, Pennsylvania courts have generally found the "device" requirement is met where a physical object was used, under Pennsylvania's Wiretapping Act – which employs identical language to the Wiretapping Acts at issue.   *See, e.g., Commonwealth v. Diego*, 119 A.3d 370, 376 (Pa. Super. 2015) (finding an iPad was a device not falling in the statute's telephone exception).   Moreover, courts analyzing what constitutes a "device" under the FSCA determinatively hold that software like that allegedly used here does not satisfy the definition of "device."  *See, e.g., Jacome*, 2021 WL 3087860, at *4-5 (no liability because tracking software is not a "device"); *Cardoso*, 2021 WL 2820822, at *2 (same).  Likewise, California courts have found that software is not a "device." *See*, e.g., *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (finding that "[s]oftware like Google Maps, Chrome, etc. are not 'devices' within the meaning of CIPA"); *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017) ("Plaintiff has not

19

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

plausibly alleged that the [software] App is a 'device'") (citing dictionary definitions of a "device"). Plaintiffs' Wiretapping Acts claims are all premised on SelectQuote's use of computer code, which does not constitute a "device" within the meaning of those statutes; therefore their claims fail for this independent reason.

**4.      Plaintiffs Consented to the Disclosure of Their Information**

Consent is a complete defense to Plaintiffs' Wiretapping Acts claims. *See, e.g., Silver*, 2021 WL 3191752, at *4; Cal. Penal Code § 632; Md. Code Ann., Cts. & Jud. Proc. § 10-402; Mass. Gen. Laws Ann. Ch. 272 § 99. A reasonable website user would have been aware of the Site's Privacy Policy, and understood that by entering information on the Site, such information was being disclosed pursuant to the Site's Privacy Policy, which disclosed such information may be shared with third parties. *See Silver*, 2021 WL 3191752, at *4; *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014) (dismissing claims based on consent); *see also Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) (same). Although Plaintiffs submit self-serving legal conclusions that they did not consent to the sharing of their information, Plaintiffs' consent can be implied through the existence of the Privacy Policy on the Site. *See Silver*, 2021 WL 3191752, at *4 (noting that a reasonably prudent user would have been aware of the privacy policy when visiting the defendant's website). Plaintiffs consent should be implied

20

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

because "the very act of sending a communication over the Internet" entails that an "objective[ly] reasonable person" would understand that such communications are subject to recording and interception by others. *Commonwealth v. Byrd*, 235 A.3d 311, 320 (Pa. 2020); *see also People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (noting that the nature of internet communication is such that a person should "reasonably expect that the communication may be overheard or recorded"); *Four Navy Seals*, 413 F. Supp. 2d at 1146-47 (citing *Lifshitz*, 369 F.3d at 190 (individuals may not reasonably expect privacy when transmitting data over the internet)). Thus, Plaintiffs' implied consent should defeat their Wiretapping Acts claims.

Indeed, the very premise of Plaintiffs' case is that ***they intended for their information to be disclosed to third parties as the very reason for using SelectQuote's website***. Plaintiffs concede on the first page of their Complaint that they provided their information to SelectQuote "so they could get quotes for life insurance." *See* Compl. ¶ 5. Each Plaintiff alleges he or she "applied for life insurance" using the Site. *See* Compl. ¶¶ 8-12. Ignoring this reality, they clearly understood that most or all of the information submitted would be shared with life insurance companies to obtain quotes. Plaintiffs thus cannot reasonably argue that they did not intend any information they submitted to be disclosed to other parties.

### 5. Plaintiffs' CIPA § 632 Claim Fails Because Plaintiffs' Interactions with the Site Do Not Constitute Confidential Communications

21

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

Count II of the Complaint asserts a claim under CIPA § 632. In relevant part, that section prohibits the "eavesdrop[ping] upon or record[ing] [of a] confidential communication." The term "confidential communication" is defined as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto …" Cal. Penal Code § 632(c). In addition to the reasons set forth above, Count II also fails because Plaintiffs' interactions with the Site do not constitute "confidential communications" as required to set forth a Section 632 cause of action. *See Campbell v. Facebook, Inc*., 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (holding that "Internet-based communications are not 'confidential' within the meaning of section 632"); *see also Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) ("[I]n California, courts have developed a presumption that Internet communications do not reasonably give rise to" an objectively reasonable expectation of confidentiality under Section 632.) (collecting cases).

## V.    PLAINTIFFS' MACPA CLAIM MUST BE DISMISSED

Plaintiffs' Massachusetts Consumer Protection claim must also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and also Rule 9(b). Plaintiffs' MACPA claim alleges SelectQuote's representation that Plaintiffs' information that was voluntarily given to SelectQuote would be "100% secure" and that SelectQuote

22

would "never sell your information," yet they allege it was subsequently "disclosed … to Facebook and LeadID," which somehow constitutes an unfair or deceptive act. Compl. ¶¶ 95-96. Building on this conclusory recitation of a bare-bones claim, Plaintiffs further allege this misrepresentation deceived them, and they would not have provided their information had they not relied on this misrepresentation. *Id.* ¶¶ 97-101. As this claim alleges fraudulent conduct, Plaintiffs were required to satisfy the heightened pleading standard of Rule 9(b). *See Offley v. Fashion Nova, LLC*, 2023 WL 6201558, at *3 (D. Mass. Sept. 22, 2023) (citing *Dumont v. Reily Foods Co.*, 934 F.3d 35, 38 (1st Cir. 2019)) (holding that a plaintiff asserting a claim under Chapter 93A is a "claim of deception [and] involves fraud," thus the claim must satisfy the heightened Rule 9(b) pleading standard). Here, Plaintiffs' MACPA claim "does not satisfy Rule 9(b) as Plaintiffs "fail to allege … 'the who, what, when, where, and how of the misconduct alleged.'"[8] *Zepeda v. Paypal, Inc.*, 777 F. Supp. 2d 1215, 1223 (N.D. Cal. 2011).

---

[8] Just looking at the who, when, and where demonstrates Plaintiffs' failure to plead with sufficient facts necessary to satisfy Rule 9. For example, to plead a MACPA claim Plaintiffs must demonstrate that "the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive practice occurred primarily and substantially within the Commonwealth [of Massachusetts]." *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 24 (1st Cir. 2003). For Plaintiffs to present such details, which are presently omitted, they needed to allege information addressing the "primarily and substantially" factors: "(1) where the defendant engaged in unfair or unscrupulous conduct; (2) where the plaintiff was

23

Plaintiffs fail to allege that SelectQuote engaged in any fraudulent conduct or misrepresented its data collection and use practices. To the contrary, SelectQuote's Privacy Policy accurately discloses SelectQuote's data collection and use practices. SelectQuote openly informed visitors that any information entered in the "Get a Free Quote" was voluntarily given to SelectQuote and by their very act of giving information, the user consented to the SelectQuote's use of the data for marketing and other purposes. Moreover, putting a finer point on the matter, there is no falsehood presented as Plaintiffs do not allege that SelectQuote "sold" users' information or that users' information was not "secure." Even assuming *arguendo* that SelectQuote shared information with Facebook and LeadID, there is no allegation regarding a sale nor that the information was not secure. While it is alleged Facebook and LeadID are able to use purportedly intercepted information to provide SelectQuote with targeted marketing, there are no allegations that SelectQuote purchased advertising or that such targeted marketing occurred here.

Plaintiffs claim that they and the "Massachusetts Subclass relied on Defendant's representations when disclosing sensitive information through the application process[, and h]ad Plaintiff and the Massachusetts Subclass members

on the receiving end of the unfair or unscrupulous conduct; and (3) the situs of plaintiff's losses due to the unfair and unscrupulous conduct." *Id.*

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

been aware that Defendant misrepresented the security of their information, they would have refrained from completing an application for life insurance." Compl. ¶¶ 98-99. However, this bare allegation does not plead reliance with any specificity and courts have found similar bare-bones claims insufficient to meet Rule 9(b)'s stringent requirements. *See Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083-84 (N.D. Cal. 2017), aff'd, 731 Fed. App'x 719 (2018) (dismissing consumer protection claim for failure to satisfy reliance under the heightened pleading requirements as the named plaintiff failed to allege she read and relied upon the allegedly fraudulent statements).

## VI.    CONCLUSION

For the reasons set forth above, SelectQuote respectfully requests that the Court grant the Motion to Dismiss and dismiss Plaintiffs' Complaint with prejudice.

Dated: February 12, 2024                     Respectfully submitted,


                                             /s/ James F. Monagle
                                             James Monagle
                                             **MULLEN COUGHLIN LLC**
                                             500 Capital Mall, Suite 2350
                                             Sacramento, CA 95814
                                             jmonagle@mullen.law
                                             ***Attorneys for Defendant***
                                             ***SelectQuote Insurances Services***

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Points and Authorities in Support of SelectQuote's Motion to Dismiss was filed electronically with the Court and served upon all counsel of record electronically through CM/ECF.

Dated:  February 12, 2024

### MULLEN COUGHLIN, LLC

By:      /s/James F. Monagle
               James F. Monagle (SBN 236638)
               500 Capitol Mall, Suite 2350
               Sacramento, CA 95814
               jmonagle@mullen.law

               ***Attorneys for Defendant,***
               ***SelectQuote Insurances Services***

MEMORANDUM POINTS & AUTHORITIES ISO DEFENDANT'S MOTION TO DISMISS
Case No.: 3:23-cv-02258-RBM-MSB